**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CHITRABHANU BHATTACHARYA, | ) | Civil Action No. 24-00900 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| THE UNIVERSITY OF PITTSBURGH– | ) | |
| OF THE COMMONWEALTH SYSTEM | ) | |
| OF HIGHER EDUCATION, | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT IN CIVIL ACTION

AND NOW comes Plaintiff, Chitrabhanu Bhattacharya ("Dr. Bhattacharya"), by and through undersigned counsel, and files this Complaint in Civil Action, stating as follows:

### I. PARTIES

1.     Dr. Bhattacharya is an adult individual currently residing in Allegheny County, Pennsylvania.

2.     The University of Pittsburgh–of the Commonwealth System of Higher Education ("Pitt" or "the University") is a state-related institution of post-secondary education that maintains a place of business at 4200 Fifth Avenue, Pittsburgh, PA 15260.

### II. JURISDICTION

3.     The jurisdiction of this Court over the matters set forth in this Complaint is founded upon 42 U.S.C. § 2000e-5(f)(3), 28 U.S.C. § 1331, and 28 U.S.C. § 1367.

### III. VENUE

4.     The events set forth in this Complaint occurred in Allegheny County, in the Western District of Pennsylvania; therefore, venue is appropriate in this Court.

## IV.  ADMINISTRATIVE EXHAUSTION

5.      On March 27, 2024, Dr. Bhattacharya filed an administrative complaint with the U.S. Equal Employment Opportunity Commission ("EEOC").

6.      The aforementioned administrative complaint was cross-filed with the Pennsylvania Human Relations Commission ("PHRC").

7.      The aforementioned complaint was docketed by the EEOC at 533-2024-01569.

8.      The aforementioned complaint raised claims for race, color, sex, national origin, age, and disability discrimination.

9.      The aforementioned complaint also raised claims for retaliation and hostile work environment.

10.     Dr. Bhattacharya's complaint, which was transferred to the Pittsburgh Commission on Human Relations for investigation, remains pending.

11.     When his claims have been administratively exhausted Dr. Bhattacharya will seek leave to file an amended complaint raising claims under federal and state anti-discrimination statutes.

## V.  FACTS

12.     Dr. Bhattacharya is a brown-skinned male of Indian national origin who is 63 years of age and disabled.

13.     Dr. Bhattacharya is a Professor of Organizations & Entrepreneurship in the University's Katz Graduate School of Business and College of Business Administration.

14.     Hired in 2017, Dr. Bhattacharya is the founder of the University's Center for Sustainable Business.

2

15.     From the time of his hire until recently, Dr. Bhattacharya successfully served as the Director for the Center for Sustainable Business.

16.     From the time of his hire until recently, Dr. Bhattacharya held the H.J. Zoffer Chair in Sustainability and Ethics.

17.     Dr. Bhattacharya has performed well including receiving awards for "Distinguished Professor of the Year" and "Excellence in Teaching" in the MBA programs at the Katz Graduate School of Business.

18.     In 2022, he received the Jan-Benedict E.M. Steenkamp Award for Long-Term Impact for the article, "Reaping relational rewards from corporate social responsibility: The role of competitive positioning" (*International Journal of Research in Marketing, Pages 224–241, Vol. 24 (3), 2007*).

19.     With 46,000+ citations per Google Scholar, Dr. Bhattacharya is one of the top cited scholars in his field.

20.     On October 30, 2023, Dr. Bhattacharya received a highly positive performance evaluation, which said in summary: "CB, your valuable contributions have been instrumental in driving our school's vision forward.  We value and appreciate your endeavors.  Thank you for elevating Pitt Business with your dedication and expertise."

21.     Prior to joining the University, Dr. Bhattacharya was a professor at the European School of Management and Technology (ESMT) in Berlin, Germany from 2009 to 2018.

22.     Dr. Bhattacharya was the Pietro Ferrero Chair in Sustainability and the Director of the Center for Sustainable Business at ESMT.

23.     Dr. Bhattacharya also is the Founding Director of the Sustainable Business

Roundtable at ESMT.

24.     From 1998 to 2010, Dr. Bhattacharya was a Professor of Marketing and the Everett Lord Distinguished Faculty Scholar at the Boston University School of Management.

25.     From 1992 to 1998, he was an Assistant Professor of Marketing at Emory University.

26.     He received his Ph.D. in Marketing from the Wharton School of the University of Pennsylvania in 1993, his MBA from the Indian Institute of Management in 1984, and his Bachelors in Economics from St. Stephen's College, Delhi in 1982.

27.     Dr. Bhattacharya was born and raised in India.

28.     As the University knows, Dr. Bhattacharya's legs were shattered in a car accident about twenty years ago forcing him to undergo six operations and leaving him with chronic pain that is exacerbated by walking.

29.     Dr. Bhattacharya manages the chronic pain with prescription medicine and psychotherapy with a psychologist.

30.     Due to mobility limitations, Dr. Bhattacharya has a state-issued Persons with Disabilities Parking Placard.

31.     Dr. Bhattacharya recently has suffered several adverse employment actions.

32.     On June 5, 2023, Dr. Bhattacharya was placed on paid administrative leave pending the outcome of a misconduct investigation by the University's Office of Compliance, Investigations, and Ethics ("CIE Office").

33.     As later set forth in writing, the University accused Dr. Bhattacharya of verbal (non-physical) sexual harassment of University employees (not undergraduate or graduate students) and improperly using University personnel to work on his professional social media accounts.

4

34.     Dr. Bhattacharya did not engage in any sexual harassment nor did he improperly use University resources for his personal use.

35.     The CIE Office purportedly conducted an investigation into these allegations and allegedly created a report of findings indicating that sexual misconduct and personal use policies had been violated "by a preponderance of the evidence."

36.     However, the University has refused to provide a copy of that report to Dr. Bhattacharya or his counsel.

37.     Dr. Bhattacharya does not know who from the CIE Office actually determined that he violated those policies, how they determined such violations, or what evidence was relied on to support the findings.

38.     Based on information and belief, the CIE Office's findings were discriminatory.

39.     By letter dated November 7, 2023, the Dean of the Business School Gene Anderson informed Dr. Bhattacharya for the first time that the "CIE Office found [him] responsible for violating both University policies."

40.     In sole reliance on the undisclosed CIE report, Dean Anderson, allegedly in consultation with the CIE Office, imposed several severe and disproportionate sanctions on Dr. Bhattacharya including:

(1)     a one-year unpaid suspension,

(2)     permanent revocation of Dr. Bhattacharya's graduate faculty status that (knowing that he taught only graduate courses), that prevents him from chairing graduate committees,

(3)     immediate removal as the Director for the Center for Sustainable Business (which

he founded), and

(4)     being stripped of his holding of the H.J. Zoffer Chair in Sustainability and Ethics, which had recently been renewed for another five year term.

41.     These sanctions have damaged Dr. Bhattacharya's career and reputation in the industry without any due process hearing, as well as costing him hundreds of thousands of dollars in salary and benefits.

42.     The University refused to adequately explain the evidence against Dr. Bhattacharya thereby crippling his ability to defend himself.

43.     The Dean's letter failed to describe in any detail what the conduct was that purportedly met the University's definition of sexual harassment.

44.     The Dean's letter provided little or no description of the conduct, identification of allegedly offending statements, dates, locations, or identification of the individual or individuals who allegedly complained of being sexually harassed.

45.     To the extent that the sexual harassment finding was based on Dr. Bhattacharya's compliments to co-workers, that finding is clearly misplaced since such compliments are not sexual in nature and do not constitute sexual harassment.

46.     To the extent that the sexual harassment finding was based on any alleged inappropriate touching which is denied, that finding likewise is clearly misplaced since the sexual harassment charges related only to "unwelcomed *verbal* advances."

47.     There is sufficient evidence to raise in an inference of discrimination.

48.     In contrast to Dr. Bhattacharya, University of Pittsburgh Business Professor Charles Hadlock (sufficiently younger than Dr. Bhattacharya, non-disabled, Caucasian, and non-Indian) has

been allowed to continue working for the University by Dean Anderson after it was publicly reported that he engaged in far more serious sexual misconduct at his former employer (Michigan State University).

49.     As the University is aware, Michigan State University released a report stating that Professor Hadlock, the school's former business school associate dean for faculty and doctoral programs, had "engaged in non-consensual sexual contact" at a gala event while he was employed there in April 2022.

50.     In contrast to Professor Hadlock, Dr. Bhattacharya was not charged with engaging in the more serious offense of "non-consensual sexual contact."

51.     The discrimination also is patent because Professor Haddock, the abled younger white employee, had not made any contribution to the University, while Dr. Bhattacharya, the older, disabled man of Indian origin had contributed substantially to Pitt.

52.     Whereas Dean Anderson imposed extreme sanctions against Dr. Bhattacharya including a one year unpaid suspension and removal from important deserved positions, Professor Hadlock continues to work for the University; the only sanction he received involved participation in a mandatory training on sexual harassment.

53.     The discrimination against Dr. Bhattacharya is particularly stark and galling to his family because his wife, Elfriede Fursich, Ph.D., was a visiting professor in the Department of Communications during the Title IX investigation of 2017-18, in which male faculty members were found to have engaged in sexual relations with students.

54.     One of the offending male faculty members outside of Dr. Bhattacharya's protected classes continues to be a full member of the Department and has served in roles including on faculty

search committees.

55.     There is no description of the three social media sites that allegedly were "predominantly personal endeavors" or what "financial benefit" Dr. Bhattacharya received from those sites.

56.     Regardless, this *de minimis* first offense for a violation of the Personal Use of University Resources Policy that may be widespread in the digital blog era does not justify any of the sanctions.

57.     By encouraging faculty members to report in their annual faculty appraisal if they are "authoring intellectual content that attracts a substantial subscription base (e.g., creating a blog that provides professional content in the individual's area of expertise)," the University appears to be encouraging outreach on social media.

58.     The Personal Use policy itself emphasizes that it is not to be used to punish faculty members.

59.     The Dean's letter also claimed that Dr. Bhattacharya allegedly failed to report his affiliation with the website or outside income generated from "book sales, speaking engagements, or consulting services" using the "MyDisclosures system."

60.     This was a new charge against Dr. Bhattacharya.

61.     Dr. Bhattacharya properly reported the outside companies he worked with during the year on the "Faculty Accomplishment System" report.

62.     The Personal Use policy does not address or apply to a faculty member's alleged failure to report outside income.

63.     In violation of baseline due process that the University must provide as a state actor,

Dr. Bhattacharya never was given notice that he was under investigation for a failure to disclose.

64. Given the lack of notice, the Administration cannot use the alleged failure-to-disclose to justify the disproportionate sanctions.

65. The Dean's letter initially informed Dr. Bhattacharya that his "sole means of appealing such finding and/or overturning such sanction is through the University Bylaws, Article IV, Section 4.8."

66. That section and associated sections *seek to provide a fair hearing process to faculty like Dr. Bhattacharya including a due process hearing* requiring the University to prove good cause for the adverse actions, as well as certain procedural rights for faculty including counsel and cross-examination, adherence to reasonable rules of evidence, a written record of testimony, and a written opinion by the fact-finding board.

67. Shortly thereafter, however, the University withdrew this avenue for appeal informing Dr. Bhattacharya that now any appeal would be reviewed under a different, more limited avenue that did not afford him a due process hearing.

68. The substitute appeal procedure is extremely limited, un-American, and made up solely of a paper review (no due process hearing) conducted by three individuals whose actions and identities are kept secret as in a "star chamber."

69. The individuals were tasked to review only the CIE report (again, which was never provided to Dr. Bhattacharya), the Dean's sanction letter, and any appeal materials supplied by Dr. Bhattacharya who submitted a brief and had to guess at the evidence against him.

70. The star chamber review was limited to whether (a) there was any new evidence that would "significantly" affect the decision, (b) there were any procedural irregularities that

"significantly" affected the decision, and (c) the sanctions were "substantially disproportionate" to the severity of the violation.

71.     Dr. Bhattacharya timely filed an appeal to then Interim and now permanent Provost Joseph J. McCarthy, Ph.D. on December 5, 2023.

72.     Without the CIE report, Dr. Bhattacharya was left to guess at how to make a defense.

73.     In the appeal documents, Dr. Bhattacharya complained that he had been discriminated against on the bases of his protected classes.

74.     Under this procedure, the filing of any appeal was supposed to delay the imposition of the sanctions.

75.     In violation of its own procedure, the University nevertheless stopped paying Dr. Bhattacharya his compensation and benefits effective on or about November 16, 2023.

76.     Subsequently, the University acknowledged this error and made a payment to Dr. Bhattacharya which was an entitlement; however, the amount paid to Dr. Bhattacharya is still deficient by more than $10,000.

77.     Under the procedure, the University is supposed to complete its appeal review within 30 days.

78.     In violation of this procedure, the University somehow took approximately 84 days from December 5, 2023 until February 27, 2024 to complete its review.

79.     By letter dated February 27, 2024, Provost McCarthy informed Dr. Bhattacharya that the (secret) three person appeal board denied his appeal purportedly because it did not fall under any of the three limited grounds for appeal, but without any comment on the evidence or further explanation.

80.     The Provost merely informed Dr. Bhattacharya that he concurred with the appeal board's findings and the investigation's conclusion that he engaged in "unwelcomed verbal advances of a sexual nature" without addressing any evidence.

81.     It may be that some of these allegations pertain to a University event when Dr. Bhattacharya was in excruciating pain due to his disability.

82.     Because the University was under threat and lockdown, Dr. Bhattacharya had to walk a long distance to the function rather than simply being dropped off at the building which exacerbated his pain and caused him to take prescription medication that affected his behavior but not to the extent that he sexually harassed anyone.

83.     The University knew about this condition, but refused to deal with this estimable faculty member in a humane or legal way.

84.     The University failed to accommodate Dr. Bhattacharya and to enter an interactive process.

85.     The University failed to apply its progressive discipline policy.

86.     On the contrary, it exacted maximal punishment especially in contrast with that applied to abled individuals.

87.     The letter did not address the alleged violation of the Personal Use policy.

88.     The Provost reiterated the sanctions against Dr. Bhattacharya including the one year suspension, permanent revocation of graduate faculty status, permanent removal as the Director for the Center for Sustainable Business, and permanently being stripped of the H.J. Zoffer Chair in Sustainability and Ethics.

89.     None of these serious career and reputation breaking permanent sanctions have

anything whatsoever to do with the alleged misconduct as he understands it.

90. They are vindictive, retaliatory, and contrary of the University's progressive discipline policy.

91. Based on a statement by a University Counsel, the University erroneously believes that Dr. Bhattacharya had been placed on paid leave for an earlier finding of misconduct when no such paid leave or earlier finding occurred.

92. Dr. Bhattacharya has been discriminated against in the terms and conditions of his employment because of his sex, national origin, race, color, age, and/or disability in violation of federal and state laws.

93. Dr. Bhattacharya has been retaliated against for engaging in protected conduct in violation of federal and state laws.

94. Dr. Bhattacharya has been treated severely, disproportionately, with unwarranted hostility and secrecy.

95. As a result of the discrimination and/or retaliation, Dr. Bhattacharya has suffered and will continue to suffer damages including, but not limited to, significant financial losses, humiliation, emotional distress, and reputation harm.

96. Dr. Bhattacharya seeks all remedies and damages available under federal and state law to remedy the discrimination and retaliation.

97. Dr. Bhattacharya demands a jury trial.

## VI.  COUNTS

### COUNT I: VIOLATION OF PROCEDURAL DUE PROCESS
### Violation of 42 U.S.C. § 1983

98. The preceding paragraphs are incorporated as if set forth at length herein.

99.     Pitt is a state-related institution of post-secondary education that receives funding from the Commonwealth of Pennsylvania.

100.    Pitt administrators were acting under the color of state law when they deprived Dr. Bhattacharya's Due Process rights.

101.    Dr. Bhattacharya could not be suspended or have his tenure appointment terminated except for cause.

102.    Pursuant to University regulations and procedures Dr. Bhattacharya would not be disciplined and/or terminated without a formal investigation and hearing, during the course of which he would be able to present testimony and evidence on his own behalf.

103.    In that he had a guarantee of continued employment at the University Dr. Bhattacharya had a property interest in his employment.

104.    The University failed to provide Dr. Bhattacharya with all of the pre-deprivation process that was constitutionally required.

105.    The University failed to provide notice of all of the allegations against him.

106.    The University failed to provide him an explanation of the evidence.

107.    The University did not provide him a meaningful opportunity to present his side of the story including, but not limited to, that he was not provided notice of all of the allegations against him and was not provided with an explanation of the evidence (including the University refused to produce the investigative report upon which the University allegedly based the adverse actions).

108.    The post-deprivation appeal procedure was not adequate to provide redress for the unwarranted suspension and other adverse actions including, but not limited to, there was no due

process hearing provided.

109.    As Dr. Bhattacharya was informed by the university, three unidentified individuals reviewed the evidence against him (which he was not provided) and upheld the suspension and the other adverse actions; however, Dr. Bhattacharya was denied access to this very same information that purportedly was reviewed by this "star chamber."

110.    In Dr. Bhattacharya's case, a maximum penalty was imposed without him being provided with a meaningful opportunity to present evidence on his own behalf or tell his side of the story with respect to the accusations of misconduct.

111.    Dr. Bhattacharya was not subjected to an impartial review of the underlying evidence, but rather was subjected to an unfair, inquisitorial process that led to a pre-determined outcome.

112.    The failure to provide Dr. Bhattacharya with an unbiased forum in which he could address the charges against him and clear his name led to adverse employment actions, which include:

(1)    a one-year unpaid suspension,

(2)    permanent revocation of Dr. Bhattacharya's graduate faculty status (knowing that he taught only graduate courses) and which prevents him from chairing graduate committees,

(3)    immediate removal as the Director for the Center for Sustainable Business (which he founded), and

(4)    being stripped of his holding of the H.J. Zoffer Chair in Sustainability and Ethics, which had recently been renewed for another five year term.

113.    Dr. Bhattacharya was also subjected to an immediate termination of his salary and

benefit payments in November 2023.

114.    Dr. Bhattacharya suffered immediate damage as a result of the University's actions.

115.    Dr. Bhattacharya seeks all remedies and damages permitted under 42 U.S.C. § 1983, including, but not limited to, back pay, front pay, emotional distress, medical harm, reputation harm damages, reinstatement, attorney's fees, costs, and pre-judgment and post-judgment interest.

### COUNT II: SEX DISCRIMINATION
### Violation of Title IX

116.    The preceding paragraphs are incorporated as if set forth at length herein.

117.    Title IX prohibits educational institutions that receive funding from the federal government from discriminating on the basis of sex.

118.    Pitt is a post-secondary educational institution that receives funding from the federal government.

119.    Dr. Bhattacharya is a male and, as such, is a member of a class protected by Title IX.

120.    Dr. Bhattacharya was falsely accused of misconduct and was subjected to multiple adverse employment actions; these include, *inter alia*:

    (1)    a one-year unpaid suspension,

    (2)    permanent revocation of Dr. Bhattacharya's graduate faculty status (knowing that he taught only graduate courses) and which prevents him from chairing graduate committees,

    (3)    immediate removal as the Director for the Center for Sustainable Business (which he founded), and

    (4)    being stripped of his holding of the H.J. Zoffer Chair in Sustainability and Ethics, which had recently been renewed for another five year term.

121.   Dr. Bhattacharya was also subjected to an immediate termination of his salary and benefit payments in November 2023.

122.   Critically, these accusations were predicated on his sex: Dr. Bhattacharya was accused of misconduct by females, who were believed over Dr. Bhattacharya.

123.   The allegations as Dr. Bhattacharya understands them amounted to mere compliments which do not constitute sexual harassment and, based on information and belief, the only reason they were found to constitute sexual harassment was that they were made by a man.

124.   Dr. Bhattacharya was treated less favorably on account of his gender.

125.   University administrators were aware of the adverse and gendered treatment of Dr. Bhattacharya.

126.   Dr. Bhattacharya seeks all remedies and damages permitted under Title IX, including, but not limited to, back pay, front pay, emotional distress, medical harm, reputation harm damages, reinstatement, attorney's fees, costs, and pre-judgment and post-judgment interest.

## COUNT III: HOSTILE WORK ENVIRONMENT
### Violation of Title IX

127.   The preceding paragraphs are incorporated as if set forth at length herein.

128.   Pitt is a post-secondary educational institution that receives funding from the federal government.

129.   Dr. Bhattacharya is a male and, as such, is a member of a class protected by Title IX.

130.   Dr. Bhattacharya was subjected to false claims that he had engaged in sexual harassment.

131.   The aforementioned false claims gave rise to a hostile work environment.

132.   Dr. Bhattacharya was subjected to false accusations that he had engaged in sexual

16

harassment.

133.   Dr. Bhattacharya was subjected to further accusations of misconduct, namely that he had used University resources for a private business enterprise.

134.   The aforementioned false accusations gave rise to hostile work environment that affected negatively the terms and conditions of Dr. Bhattacharya's employment.

135.   The accusations that he had engaged in sexual harassment are linked to Dr. Bhattacharya's gender.

136.   University administrators were aware of the adverse and gendered treatment of Dr. Bhattacharya.

137.   Dr. Bhattacharya seeks all remedies and damages permitted under Title IX, including, but not limited to, back pay, front pay, emotional distress, medical harm, reputation harm damages, reinstatement, attorney's fees, costs, and pre-judgment and post-judgment interest.

### COUNT IV: RACIAL DISCRIMINATION
### Violation of 42 U.S.C. § 1981

138.   The preceding paragraphs are incorporated as if set forth at length herein.

139.   42 U.S.C. § 1981 prohibits the impairment of contract on the basis of race.

140.   Dr. Bhattacharya is of Indian/South Asian race and national origin and, as such, is a member of a class protected by 42 U.S.C. § 1981.

141.   Dr. Bhattacharya was falsely accused of misconduct and was subjected to multiple adverse employment actions; these include, *inter alia*:

> (1)   a one-year unpaid suspension,

> (2)   permanent revocation of Dr. Bhattacharya's graduate faculty status (knowing that he taught only graduate courses) and which prevents him from chairing

17

        graduate committees,

(3)    immediate removal as the Director for the Center for Sustainable Business (which he founded), and

(4)    being stripped of his holding of the H.J. Zoffer Chair in Sustainability and Ethics, which had recently been renewed for another five year term.

142.    Dr. Bhattacharya was also subjected to an immediate termination of his salary and benefit payments in November 2023.

143.    Similarly situated colleagues of Dr. Bhattacharya who were not of Indian/South Asian race or national origin including, but not limited to, Professor Haddock, were not subjected to similar adverse actions.

144.    To the contrary, non-Indian or non-South Asian faculty in the Pitt Department of Communications who engaged in actions similar to what Dr. Bhattacharya was accused of doing were not disciplined as severely by the University.

145.    Dr. Bhattacharya seeks all remedies and damages permitted under 42 U.S.C. § 1981, including, but not limited to, back pay, front pay, emotional distress, medical harm, reputation harm damages, reinstatement, attorney's fees, costs, and pre-judgment and post-judgment interest.

### COUNT V: RETALIATION
### Violation of 42 U.S.C. § 1981

146.    The preceding paragraphs are incorporated as if set forth at length herein.

147.    42 U.S.C. § 1981 prohibits the impairment of contract on the basis of race.

148.    42 U.S.C. § 1981 also prohibits retaliation against individuals who oppose complain of racial discrimination.

149.    Dr. Bhattacharya is of Indian/South Asian race and national origin and, as such, is

a member of a class protected by 42 U.S.C. § 1981.

150.    Dr. Bhattacharya engaged in protected activity when he appealed the initial adverse decision and alleged that the decision was discriminatory including based on his race, color, and national origin.

151.    The aforementioned appeal challenged a patently discriminatory act against Dr. Bhattacharya.

152.    Dr. Bhattacharya was falsely accused of misconduct and was subjected to multiple adverse employment actions; these include, *inter alia*:

    (1)    a one-year unpaid suspension,

    (2)    permanent revocation of Dr. Bhattacharya's graduate faculty status (knowing that he taught only graduate courses) and which prevents him from chairing graduate committees,

    (3)    immediate removal as the Director for the Center for Sustainable Business (which he founded), and

    (4)    being stripped of his holding of the H.J. Zoffer Chair in Sustainability and Ethics, which had recently been renewed for another five year term.

153.    Dr. Bhattacharya was also subjected to an immediate termination of his salary and benefit payments in November 2023.

154.    After he complained of racial discrimination, the University upheld the adverse actions and severe sanctions.

155.    The adverse actions against Dr. Bhattacharya were precipitated by his engagement in protected activity.

156.     Dr. Bhattacharya seeks all remedies and damages permitted under 42 U.S.C. § 1981, including, but not limited to, back pay, front pay, emotional distress, medical harm, reputation harm damages, reinstatement, attorney's fees, costs, and pre-judgment and post-judgment interest.

### COUNT VI: DISABILITY DISCRIMINATION/FAILURE TO ACCOMMODATE
### Violation of the Rehabilitation Act

157.     The preceding paragraphs are incorporated as if set forth at length herein.

158.     The Rehabilitation Act prohibits organizations that receive funding from the federal government from discriminating on the basis of disability.

159.     Pitt is a post-secondary educational institution that receives funding from the federal government.

160.     As a result of an automobile accident, Dr. Bhattacharya suffers from chronic pain; this condition negatively affects his daily life functions.

161.     Dr. Bhattacharya is disabled as a consequence of his chronic pain.

162.     University administrators were aware of Dr. Bhattacharya's need for accommodation.

163.     Dr. Bhattacharya could perform the essential duties of his position with reasonable accommodation.

164.     Pitt failed to accommodate Dr. Bhattacharya, or engage in any interactive process geared towards determining a reasonable accommodation for his disabilities.

165.     Rather than accommodate Dr. Bhattacharya, Pitt administrators placed his office at a location inconveniently located apart from the rest of the Center for Sustainable Business, forcing him to walk an excessive length and/or depriving him of the opportunity to interact in-person with his team.

166.     Because he was forced to walk a significant distance because of an active shooter

lockdown on campus to start the from his office to the rest of the Center for Sustainable Business meeting on March 29, 2023, Dr. Bhattacharya has forced to take pain medication that adversely effected his behavior.

167.    Reacting to this adverse behavior, the University failed to apply its progressive discipline policy to Dr. Bhattacharya but rather imposed the maximum penalty.

168.    Dr. Bhattacharya was treated less favorably his non-disabled colleagues.

169.    Dr. Bhattacharya was falsely accused of misconduct and was subjected to multiple adverse employment actions; these include, *inter alia*:

  (1)    a one-year unpaid suspension,

  (2)    permanent revocation of Dr. Bhattacharya's graduate faculty status (knowing that he taught only graduate courses) and which prevents him from chairing graduate committees,

  (3)    immediate removal as the Director for the Center for Sustainable Business (which he founded), and

  (4)    being stripped of his holding of the H.J. Zoffer Chair in Sustainability and Ethics, which had recently been renewed for another five year term.

170.    Dr. Bhattacharya was also subjected to an immediate termination of his salary and benefit payments in November 2023.

171.    Dr. Bhattacharya seeks all remedies and damages permitted under the Rehabilitation Act, including, but not limited to, back pay, front pay, emotional distress, medical harm, reputation harm damages, reinstatement, attorney's fees, costs, and pre-judgment and post-judgment interest.

## COUNT VII: BREACH OF CONTRACT
### Violation of Pennsylvania Common Law

172.    The preceding paragraphs are incorporated as if set forth at length herein.

173.    A contract exists between Dr. Bhattacharya and the University consisting of the University's policies and procedures.

174.    Those policies and procedures include, but are not limited to, University Procedures CS-27, CS-20, and CS-11 (attached).

175.    CS-27 "establishes procedures pertaining to the University's compliance with Title IX as set forth in University Policy CS 27, Title IX," and addresses "Reporting Sexual Harassment." CS-27, p. 1-2.

176.    Dr. Bhattacharya was accused of sexual harassment as that term is defined in Policy CS-27.

177.    Under CS-27, upon receipt of a Formal Complaint of Sexual Misconduct, the Office of Civil Rights and Title IX are required to provide written notice to the Respondent including, but not limited to, the "allegations potentially constituting a violation of Policy CS 27, including identification of Complainant(s) and Respondent(s), the conduct allegedly constituting Sexual Harassment, and the date and location of the alleged incident, if known."

178.    Here, Dr. Bhattacharya as the Respondent accused of sexual harassment, was not provided required written notice including, but not limited to, the identification of the Complainants, the conduct allegedly constituting sexual harassment, or the date(s) or location(s) of the alleged incidents.

179.    This breach hampered his ability to defend against the sexual harassment accusations against him.

22

180.    Under CS-27: "Prior to the completion of the investigative report, the investigator shall provide both Complainant and Respondent with an equal opportunity to inspect and review any evidence that is directly related to the allegations in the Formal Complaint that is obtained as part of the investigations (including witness summaries), regardless of whether that evidence is deemed relevant by the investigator.  Parties will be permitted to submit to the investigator a written response to the evidence for the investigator to consider."

181.    Here, Dr. Bhattacharya as the Respondent, was not provided the opportunity to inspect and review the evidence obtained during the investigation (including witness summaries); nor was he provided the opportunity to submit a written response to that evidence.

182.    This breach hampered his ability to defend against the sexual harassment accusations against him.

183.    Under CS-27, once complete, the investigative report is to be provided to the "Decision-Maker as well as both the Complainant and the Respondent (and their Advisors of choice).  Parties will be permitted to submit to the Decision-Maker a written response to the investigative [report]."

184.    Here, Dr. Bhattacharya as the Respondent, was not provided a copy of the investigative report nor given the opportunity to respond to it in writing.

185.    This breach hampered his ability to defend against the sexual harassment accusations against him.

186.    Under CS-27, "[a] live hearing will take place related to the allegations of Sexual Harassment."

187.    Here, there was no live hearing relating to the allegations of sexual harassment

against Dr. Bhattacharya and no offer of any such hearing was made to him.

188.    This breach caused damage to Dr. Bhattacharya including that it denied him the opportunity to properly defend himself against the sexual harassment allegations.

189.    The University's breaches caused damage to Dr. Bhattacharya including, but not limited to, that the University found him guilty of sexual harassment and imposed draconian sanctions against him including a one-year suspension without providing him required notice, without allowing him to review and comment on the investigative report, and without the required live hearing resulting in a loss of salary and other benefits of his employment.

190.    To the extent the University claims that Policy CS-20 applies, it is noted that CS-20 itself reads that "this document does not apply to the University's prohibition of 'Sexual Harassment' as specifically defined in and addressed under Policy CS 27." *See also* CS-20, p. 5, n. 1 ("As noted in Section I of Policy CS 20, to the extent any prohibited conduct described herein would otherwise constitute 'Sexual Harassment' as specifically defined under Policy CS 27, Title IX, all such conduct will be addressed under Policy CS 27 and its accompanying procedure.  Any reference to 'sexual harassment' herein is solely related to that term as it is treated under this Policy and Process.").

191.    Dr. Bhattacharya was accused of sexual harassment and, thus, Policy CS-27 was to apply.

192.    To the extent CS-20 applies, "Sanctions will not be imposed until the grievance process is complete, including, as applicable, until the time for an appeal of the outcome runs out or until a determination is made regarding any such appeal."

193.    Here, the University imposed sanctions including terminating Dr. Bhattacharya's

salary and benefits during his appeal and prior to the determination on his appeal.

194.    Dr. Bhattacharya, through counsel, raised this issue and the Parties worked to remedy the breach but the University still has not made Dr. Bhattacharya whole for his losses in violation of contract.

195.    Dr. Bhattacharya was found to have violated the University's Financial Affairs policy – CS-11 – regarding personal use of university resources and severely sanctioned for the alleged violation.

196.    The University's Financial Affairs policy regarding personal use of university resources clearly states that it "is not intended to be punitive in nature," and that abuse "can and should be detected and prevented by good management, even in the absence of a formalized policy."

197.    In violation of this provision that the policy is not punitive, the University severely sanctioned Dr. Bhattacharya for his alleged violation of this policy causing him to lose his salary and other employment benefits (graduate faculty status, Director position, endowed Chair, *etc.*).

198.    Dr. Bhattacharya demands all remedies and damages available to him for breach of contract.

Respectfully submitted,

LIEBER HAMMER HUBER & PAUL, P.C.


s/James B. Lieber
James B. Lieber
Pa. I.D. No. 21748
Thomas M. Huber
Pa. I.D. No. 83053
Jacob M. Simon
Pa. I.D. No. 202610
1722 Murray Avenue, 2nd Floor
Pittsburgh, PA 15217
(412) 687-2231 (telephone)
(412) 687-3140 (fax)

Counsel for Plaintiff