**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CHITRABHANU BHATTACHARYA,<br><br>Plaintiff,<br><br>v.<br><br>THE UNIVERSITY OF PITTSBURGH OF THE COMMONWEALTH SYSTEM OF HIGHER EDUCATION,<br><br>Defendant. | ) | Civil Action No. 2:24-cv-00900<br>Judge Nora Barry Fischer<br><br>Docket Nos. 94 and 98 |

**MEMORANDUM OPINION ON CROSS-MOTIONS**
**FOR SUMMARY JUDGMENT WITH RESPECT TO DUE PROCESS CLAIM**

## I. Introduction

Plaintiff, Chitrabhanu Bhattacharya, a tenured professor employed in the School of Business of Defendant, the University of Pittsburgh, was suspended without pay for a year, and terminated from the H.J. Zoffer endowed Chair, for "pervasive but not severe" violations of Defendant's sexual misconduct policy. In Count I of his First Amended Complaint (Docket No. 26), Plaintiff asserts a claim under 42 U.S.C. § 1983[1] for deprivation of procedural due process rights secured by the Fourteenth Amendment.[2] Plaintiff has moved for partial summary judgment

[1] Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

[2] The Fourteenth Amendment provides in relevant part: "nor shall any state deprive any person of . . . property, without due process of law." U.S. Const. Amd. XIV, Sec. 1.

with respect to Count I; and Defendant has also moved for summary judgment as to Count I (as part of a broader motion seeking summary judgment as to all Counts). (Docket Nos. 94 and 98, respectively). The parties' positions have been briefed and argued, and the motions are ripe for decision. For the reasons set forth below, the Court will grant Plaintiff's motion and will deny Defendant's correspondent motion (*i.e.*, solely as to Count I).

## II. Discussion

There is no question that Defendant subjected Plaintiff to sanctions under color of State law.[3] In order to make out his due process claim, Plaintiff must establish that (a) the sanctions imposed on him – *i.e.*, suspension without pay for one year and termination of his endowed Chair – deprived him of a property interest,[4] and (b) the procedures employed in imposing and reviewing those sanctions, were constitutionally insufficient. *See, e.g.*, *Hill v. Borough of Kutztown*, 455 F.3d 225, 233–34 (3d Cir. 2006) ("To state a claim under § 1983 for deprivation of procedural due process rights, a plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.'").

### A. Property Interest

Rights comprising a property interest protected under the Fourteenth Amendment are determined by State law. The requisite interest may be established by statute, regulation, policy or contract. A plaintiff's unilateral expectation, even if reasonable, is insufficient to establish a

[3] *See McKinney v. University of Pittsburgh*, 915 F.3d 956, 959 n.3 (3d Cir. 2019) ("For purposes of the state action doctrine, the parties agree that '[a]ctions taken by [the University] are . . . actions taken under color of state law and are subject to scrutiny under section 1983.'") (brackets and ellipsis in original) (quoting *Krynicky v. Univ. of Pittsburgh*, 742 F.2d 94, 103 (3d Cir. 1984)).

[4] Although Plaintiff was also removed from his directorship of the Center for Sustainable Business, he submits no argument or evidentiary support suggesting that he had a property interest in that directorship. (Docket Nos. 96, 120, *passim*).

property interest. Rather, the plaintiff's interest must derive from an express grant or a mutual understanding.[5]

**1. Continuation of Tenured Employment**

Case law establishes that a tenured faculty member at a State university has a protected property interest in continued employment. *See, e.g.*, *Gilbert v. Homar*, 520 U.S. 924, 928–29 (1997) ("public employees who can be discharged only for cause have a constitutionally protected property interest in their tenure"); *McKinney*, 915 F.3d at 960 ("In the context of state universities, for example, the [Supreme] Court has recognized a property interest in 'continued employment' where tenured faculty have been expressly informed that they may be terminated only 'for cause.'"); *Univ. of Pittsburgh v. United States*, 507 F.3d 165, 176 (3d Cir. 2007) ("tenured professors at public universities hold a property interest in their tenure"); *Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1077 (3d Cir.1990) ("A property interest in employment exists where state law supports a claim of entitlement to continued employment.'). Defendant contends that because Plaintiff's employment was merely suspended (for a year without pay), rather than terminated, he was not deprived of any property right, and hence was not entitled to any procedural protections under the Due Process Clause.[6]

---

[5] "Core to the existence of an individual property interest is the requirement that the plaintiff have 'a legitimate claim of entitlement to' the interest at issue that stems from 'an independent source such as state law' or 'rules or understandings that secure certain benefits.'" *McKinney*, 915 F.3d at 960, quoting *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972).

[6] Plaintiff argues that under Section IV(D)(3) of the Faculty Reviews and Appeals Process ("FRAP"), "the University may not terminate a faculty member's appointment – 'any appointment' – or take 'other action short of termination' except 'for cause.'" (Docket No. 95 at 4) (quoting Docket No. 97-9 at 17). Defendant responds that "[o]n its face, the [FRAP], including Section IV(D)(3), is an appeal process only for decisions related to nonrenewal of faculty employment contracts, denial of tenure, and denial of promotion", and is inapplicable to Plaintiff's suspension. (Docket No. 114 at 5). Defendant is correct on this issue. (Docket No. 97-9 at 1-18). Moreover, Part IV(D) of the FRAP (which includes Section IV(D)(3)), by its terms, is limited to "formal review proceedings" before a Hearing Board convened by the Chancellor upon a faculty member's request following "completion of review by an Appeals Panel and final action by the Provost (or Senior Vice Chancellor for Health Sciences)" under Parts IV(B) or (C). Even if the FRAP were potentially applicable to Plaintiff's case, none of the multiple prerequisites for applicability of Section IV(D)(3) has occurred here.

Putting aside the numerous cases finding no right to due process for lesser impositions (brief or paid suspensions, pay cuts, reprimands, reassignments, *etc*.) on one hand,[7] and those finding a right to due process for suspensions expressly subject to a "for cause" requirement (by statute, collective bargaining agreement, *etc*.) on the other,[8] it appears that Plaintiff's position finds more applicable support in the case law of this Circuit. *See Homar v. Gilbert*, 89 F.3d 1009, 1014 (3d Cir. 1996) (indicating that although plaintiff was not "completely terminated", his undisputed "property interest in his employment" entitled him to some "degree of due process" in connection with his "suspension without pay and . . . his demotion"), *reversed on other grounds sub nom Gilbert v. Homar*, 520 U.S. 924 (1997).[9] *See also Vatner v. Bd. of Trs. of the Univ. of Med.*, 2015

[7] *See, e.g., McKinney v. Univ. of Pittsburgh*, 915 F.3d 959 (3d Cir. 2019) (salary reduction); *Donovan v. Pittston Area Sch. Dist.*, 717 F. App'x 121, (3d Cir. 2017) (demotion); *Ferraro v. City of Long Branch*, 23 F.3d 803 (3d Cir. 1994) (reassignment); *Rode v. Dellarciprete*, 845 F.2d 1195 (3d Cir. 1988) (reassignment); *Deltondo v. Sch. Dist. of Pittsburgh*, 2023 WL 2876812 (W.D. Pa. Jan. 30, 2023) (suspension with pay); *Musila v. Lock Haven Univ.*, 970 F. Supp. 2d 384, 392-93 (M.D. Pa. 2013) (written reprimand).

[8] For example, Plaintiff proffers a line of Third Circuit cases stating that "under Pennsylvania law, suspensions, like dismissals, are only proper for just cause; therefore, [tenured employees have] a separate property interest in not being suspended." *Gniotek v. City of Philadelphia*, 808 F.2d 241, 243 n.5 (3d Cir.1986); *Dee v. Borough of Dunmore*, 549 F.3d 225, 230 n.6 (3d Cir. 2008). (Docket Nos. 120 at 7, 126 at 2) (brackets by Plaintiff). *See also Solomon v. Phila. Housing Auth.*, 143 F. App'x 447, 452 (3d Cir. 2005) (quoting foregoing passage from *Gniotek*). However, *Gniotek* and *Solomon* involved suspension of police officers, and *Dee* involved suspension of a firefighter; and the "Pennsylvania law" referred to is a section of the Pennsylvania Borough Code that applies only to police and firemen. *See* 8 Pa. C.S. § 1190(a) ("No person employed in any police or fire force of any borough may be suspended without pay, removed or reduced in rank except for the following reasons:") (specifying permitted causes); *Dee*, 549 F.3d at 230 (quoting and applying predecessor to § 1190(a)). Plaintiff also cites one district court case that applies the same language from *Gniotek* to a suspended employee who was not a policeman or fireman. *See Novak v. Borough of Dickson City*, 2006 WL 1000016, at *3 (M.D. Pa. Apr. 17, 2006). (Docket Nos. 120 at 7, 126 at 2). *Novak* was, however, decided before the Third Circuit clarified in *Dee* that the broad statement in *Gniotek* was limited to cases governed by the cited section of the Borough Code.

[9] In rejecting the Third Circuit's blanket holding that due process requires "that a governmental employer may not suspend an employee without pay unless that suspension is preceded by [a] presuspension hearing", the Supreme Court did not take issue with the underlying premise that the Due Process Clause is applicable to such a suspension in the first place. Rather, the Court assumed (without deciding) that unpaid suspension of tenured public employees requires due process:

> Although we have previously held that public employees who can be discharged only for cause have a constitutionally protected property interest in their tenure and cannot be fired without due process, we have not had occasion to decide whether the protections of the Due Process Clause extend to discipline of tenured public employees short of termination. . . . [W]ithout deciding it we will . . . assume that the suspension infringed a protected property interest.

*Gilbert*, 520 U.S. at 928-29 (citations, brackets and quotation marks omitted). Because the Supreme Court did not decide the issue, its holding left the decision below standing with respect thereto. Accordingly, the Third Circuit's

WL 461901, at *10 (D.N.J. Feb. 4, 2015) ("[T]he Court finds that Plaintiff has met his burden of demonstrating that his suspension without pay from his tenured employment amounts to a property deprivation sufficient to implicate procedural due process rights."). *Cf. Homar*, 89 F.3d at 1016-17 (referring to employee's "property interest in employment *and its accompanying salary*") (emphasis added).

Defendant argues that *McKinney* forecloses a claim that discipline short of termination implicates due process requirements. According to Defendant, "[t]he Third Circuit in *McKinney* held that there was no protected property interest based on policy, short of tenure removal and termination of employment, and that, as such, the University had the discretion to impose other disciplinary penalties as it saw fit." (Transcript of July 8, 2026 Proceedings, Docket No. 132 at 28-29). However, in *McKinney*, the Court of Appeals merely found that a salary reduction did not infringe a protected property interest where the policy relied upon implicitly provided for salary reduction for unsatisfactory performance. *McKinney*, 915 F.3d at 963.[10] Here, in contrast, there has been no suggestion that anything in Defendant's tenure policy implicitly (or explicitly) provides for lengthy (albeit non-permanent) discontinuation of a professor's salary. Moreover, the *McKinney* Court noted that the plaintiff therein did not "contend that the salary reduction he received was of sufficient magnitude to implicate the interest a tenured faculty member at the University would have in continued employment", while Plaintiff herein does contend that

---

ruling in *Homar* that suspension of a tenured public employee without pay requires some degree of due process remains binding law in this Circuit.

[10] As the Court elaborated, "the Policy's three-tiered rating structure (meritorious, satisfactory, unsatisfactory) itself reinforces the understanding that salary may be reduced as well as increased. Given that the Policy provides for salary increases beyond 'maintenance' for those whose performance is deemed 'meritorious' and an 'increase . . . for maintenance of real salary,' App. 1153, for those whose performance is deemed 'satisfactory,' the logical implication is that those whose performance is 'less than satisfactory' . . . may be subject to salary reductions." *McKinney*, 915 F.3d at 963. The Court concluded that "the three-tiered rating structure indicate[s] that salaries are subject to possible annual adjustments, and that McKinney thus had no more than a unilateral expectation of receiving his full salary". *Id.* (citations, internal quotation marks and brackets omitted).

suspension of his entire salary infringed his interest in continued employment. *McKinney*, 915 F.3d at 960, n.4.

Ultimately, subjecting a professor to loss of the opportunity to work and his pay for an entire year[11] without cause[12] would appear, under the law of this Circuit, incompatible with the concepts of tenure and the right to continued employment.[13] Accordingly, the Court finds that the unpaid suspension as imposed deprived Plaintiff of a property interest protected under the Fourteenth Amendment.

**2. The Endowed Chair**

Plaintiff also asserts a property interest in continued occupancy of the H.J. Zoffer Chair (which provided him with $50,000 in additional annual salary, plus administrative perquisites).[14] The February 2, 2017 letter from the prior dean documenting Plaintiff's appointment stated that "the Zoffer Chair and all the support associated with it are guaranteed for the identified term of

[11] Defendant contends that Plaintiff "misrepresents the nature of [his] suspension" in characterizing it as "tak[ing] away [his] tenure (on a full year basis)", because "[f]irst, [his] tenure was never 'take[n] away'", and "[s]econd, though [he] was suspended without pay for a total of 12 months, his unpaid suspension did not cover any 'full' academic, fiscal, compensation, or calendar year." (Docket No. 114 at 37). As to the first objection, although Plaintiff's "tenure" – *i.e.*, his right to continuation of his job – was not revoked, it was certainly infringed during the year when his work and salary were taken away. As to the second, it is difficult to see how Defendant's election to commence Plaintiff's "12 month" suspension on a day that did not coincide with the start of an academic, fiscal, tax or calendar year could diminish the effective severity of the sanction.

[12] The Court is not suggesting that Defendant suspended Plaintiff without cause; rather, the Court is addressing Defendant's contention that the suspension did not implicate a property interest, which is equivalent to a contention that it would have been entitled to suspend Plaintiff without cause. *See Richardson v. Felix*, 856 F.2d 505, 509 (3d Cir. 1988) ("The hallmark of a constitutionally protected property interest is an individual entitlement that 'cannot be removed except "for cause." ' ") (quoting *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 430 (1982)).

[13] Defendant's counsel concedes that "if you are suspended without pay indefinitely, at some point that might be viewed as interrupting your continuous employment." (Docket No. 132 at 73). The Court agrees and finds that the point occurs substantially before an unpaid suspension reaches a year in duration. *See Vatner*, 2015 WL 461901 at *10 (finding, in case of ten-day unpaid suspension, that "the private interest . . . [in] continuation of Plaintiff's pay (*i.e.*, the means of sustaining his livelihood) . . . . is, of course, significant"). *See also Solomon*, 143 F. App'x at 454 ("the private interest at stake was great, namely the deprivation of the means of Appellant's livelihood.").

[14] Defendant contends that Plaintiff's First Amended Complaint (Docket N0. 26) did not effectively assert a claim pertaining to the endowed chair. (Docket No. 115 at 11 n.6). Plaintiff responds that references in the Complaint put Defendant "on notice" of this claim (which is "simply an additional source of the already-pleaded property interest". (Docket No. 120 at 8 n.2). The Court agrees with Plaintiff that a claim for loss of the Zoffer Chair is fairly encompassed within Count I of the First Amended Complaint. (Docket No. 26 at ¶¶ 44, 116).

the appointment so long as you continue employment at Katz/CBA." (Docket No. 97-2 at 3). Defendant characterizes the initial appointment letter as "expired" and contends that because the "Zoffer Chair serves at the discretion of the Dean", and the current Dean's October 2, 2022 re-appointment letter "did not contain any 'guarantee' language", the "operative Zoffer Chair appointment letter does not create a property interest". (Docket No. 115 at 10, 19). Plaintiff counters that because the re-appointment letter states that its appointment is "a continuation of [the] previous five-year appointment" the guarantee remains in effect for the renewed five-year term. (Docket No. 120 at 9).[15] A renewal letter continuing a prior appointment cannot reasonably be interpreted to effect such a fundamental change as converting the appointment from "guaranteed" to "at will" *sub silentio*. *Cf. Helena Chem. Co. v. Beiler*, 2016 WL 4723680, at *3 (Pa. Super. Ct. June 30, 2016) ("It is a general rule of law in the Commonwealth that where a contract refers to and incorporates the provisions of another, both shall be construed together."). The Court finds that the re-appointment letter unambiguously continued material contract terms from the initial appointment letter, including the "guarantee" provision;[16] and that Defendant's removal of Plaintiff from the Zoffer Chair prior to expiration of the re-appointment's five-year term therefore deprived him of a property interest protected under the Fourteenth Amendment.

---

[15] Defendant's argument that "[t]here is nothing to suggest the cited language meant [Plaintiff] was entitled to the Zoffer Chair notwithstanding his own misconduct" appears misdirected. (Docket No. 115 at 19). Plaintiff's claim is not that the guarantee "insulates" him from discipline for misconduct, but rather that it protects him from removal without cause.

[16] Even if Defendant's contrary interpretation were also reasonable, rendering the contract ambiguous, the Court would resolve the ambiguity against Defendant, a sophisticated entity which presumably had access to in-house counsel and extensive experience with documenting the terms of academic appointments, and whose agent Dean Eugene Anderson was solely responsible for drafting the re-appointment letter. *See Penndot v. Semanderes*, 531 A.2d 815, 818 (Pa. Commw. 1987) ("When a contract is ambiguous, . . . the rule of *contra proferentem* requires the language to be construed against the drafter, . . . and in favor of the other party if the latter's interpretation is reasonable.") (citing *Central Transportation, Inc. v. Board of Assessment Appeals of Cambria County*, 417 A.2d 144 (Pa. 1980)). *Cf.* Docket No. 132 at 74 ("Dean Anderson drafted his reappointment letter as Dean Anderson saw fit. I am not aware of negotiations . . . or a discussion regarding the terms of Dr. Bhattacharya's reappointment other than that he was reappointed for another five-year period.").

**B. Sufficiency of Process**

Because Plaintiff's property interest in continued employment encompasses a right to be free from a year-long unpaid suspension without cause, and because the terms of his renewed appointment to the Zoffer Chair gave him a contractual right to be removed only for cause, Defendant was required to provide him due process in connection with his suspension and removal. Plaintiff's due process claim therefore turns on the sufficiency of the pre- and post-deprivation procedures provided for challenging the discipline imposed on him.[17]

**1. Pre-deprivation Process**

The Third Circuit has summarized the requirements for pre-deprivation process in a case involving suspension without pay as follows:

> Ordinarily, a pre-deprivation hearing "need not be elaborate." [*Cleveland Bd. of Ed. v. Loudermill*, 470 U.S. 532, 545 (1985).] Where adequate post-deprivation procedures are available, an employee is entitled only to "notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." *Id.* The hearing can be informal and "need not definitively resolve the propriety" of the deprivation. *Id.* "It should be an initial check against mistaken decisions — essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action." *Id.* An employee is generally not entitled to notice of the reasons for his discharge in advance of a pre-deprivation hearing, *Gniotek*, 808 F.2d at 244, or to present his case to an impartial decision-maker at such a hearing, *McDaniels v. Flick*, 59 F.3d 446, 460 (3d Cir. 1995).

---

[17] The procedures employed by Defendant in this case were characterized by multiple missteps. Defendant hired a replacement for Plaintiff as director of the Center for Sustainable Business before the investigation which led to Plaintiff's ouster from that position was completed, and suppressed information as to the duration of the new hire because of the ongoing investigation. (Docket No. 114 at ¶¶ 91-95). Defendant's purported denial of ¶¶ 92-95 "as immaterial" amounts to an admission of the facts stated therein. *Cf.* Fed. R. Civ. P. 56(e)(2). Then in the November 7, 2023 letter notifying Plaintiff of the sanctions against him, Defendant incorrectly advised Plaintiff that "the discipline imposed in this matter includes termination of your tenured appointment" and that his "sole means of appealing . . . and/or overturning such sanction is through" a bylaw pertaining to termination of tenure that was inapplicable to Plaintiff's appeal. (Docket No. 101-23). Finally, Defendant erroneously commenced Plaintiff's unpaid suspension before his appeal was decided, in violation of Defendant's CS_20 policy. (Docket No. 114 at ¶¶ 129-30). These missteps suggest that Defendant proceeded with undue haste, or perhaps in a rush to judgment.

*Schmidt v. Creedon*, 639 F.3d 587, 597 (3d Cir. 2011).

**a. Sufficiency of Notice**

Here, Plaintiff contends that Defendant failed to give him adequate notice of the charges against him, or an adequate explanation of Defendant's evidence. He avers, to the contrary, that Defendant provided a July 10, 2023 notice of charges whose "sole allegation was that between June 2022 and May 2023 he engaged in 'unwelcomed verbal advances of a sexual nature.'" (Docket No. 96 at 21; No. 114 at 46).[18] The July 10 letter did not disclose any charges of unwanted touching; and (with a single exception) Plaintiff was provided no notice of such charges prior to or at the commencement of a July 27, 2023 interview with Defendant's investigator Laurel Gift, Esq. (in which Plaintiff first learned the specifics of multiple charges against him in the course of being questioned about them by Ms. Gift). (Docket No. 95 at ¶¶ 24, 47, 55).[19] Although Defendant alleges that Plaintiff was "verbally informed of the allegations against him, including allegations of physical touching, during his paid suspension meeting on June 6, 2023" (Docket No. 115 at 24, citing Docket No. 100 at ¶ 65), the paragraph of Defendant's CSMF cited in support of this

[18] *Cf. Morton v. Beyer*, 822 F.2d 364, 370 (3d Cir. 1987) (administrator's "vague reference on the morning of the hearing to a date and a general allegation of inmate abuse [was not] sufficient to provide [employee] with effective notice of the particular incident or the specific charges to which he should respond").

[19] Paragraph 55 of Plaintiff's Concise Statement of Material Facts ("CSMF") states that Plaintiff "was not provided any written or oral notice of the allegations of unwanted touching or unwelcomed physical contact either in advance or at the beginning of the interview." (Docket No. 95 at ¶ 55). Defendant denies that averment, pointing out that in ¶ 24 of his CSMF Plaintiff admitted that in a June, 2023 meeting he was informed of one such incident, *i.e.*, that "Center staff mentioned that [he] had touched Center employee Kristen Ahern". (Docket No. 114 at ¶ 55). Defendant also asserts that in ¶ 22 of his CSMF Plaintiff conceded that "he was informed . . . that the allegations against him were in the same vein as his 'priors' (which included allegations of physical touching)". (*Id.*) However, ¶ 22 actually relates that Plaintiff was told that his administrative leave "had something to do with my priors or, you know, kind of some history with the Title IX office", which manifestly does not indicate whether any new allegations against him were "in the same vein" as prior allegations of touching. Finally, Defendant asserts that "Gift also discussed the allegations of physical touching with Bhattacharya's counsel." (*Id.*, citing Defendant's CSMF, Docket No. 100 at ¶ 120). However, in response to the cited ¶ 120 Plaintiff "disputes that Ms. Gift discussed any specific physical touching allegations with Plaintiff's counsel" (Docket No. 111 at ¶ 120); and the deposition cited by Defendant in support of ¶ 120 is consistent with Plaintiff's position on the matter. (Docket No. 101-3 at 28-29).

allegation does not mention physical touching.[20] Ultimately, Ms. Gift concluded that Plaintiff had engaged in pervasive sexual harassment based upon some 16 "behaviors/comments" comprising nine alleged incidents of unwelcome physical conduct and 10 or 11 alleged incidents of verbal behavior, [21] as summarized in a table in her Investigative Report. [22] (Docket No. 101-5 at 26-28; No. 114 at ¶¶ 82-86). Crucially, Plaintiff alleges, and Defendant effectively does not deny, that he "had no notice" of nine specified "behaviors and comments listed in the table that he was not asked about during his July 27, 2023 interview or at any other time during the investigation". (Docket No. 95 at ¶ 87).[23]

In response to Plaintiff's argument on pre-deprivation process, Defendant contends that Plaintiff is entitled to less than the process contemplated in *Loudermill*[24] (which Defendant describes as a "heightened standard" applicable only to termination cases),[25] because Plaintiff's interest is "relatively minimal", as "his employment was not terminated; his tenure was not impacted; he received at least partial compensation from the University in each and every relevant

[20] The cited paragraph reads: "At the time of his suspension, Dean Anderson provided [Plaintiff] written notice of the inquiry and verbally informed him of the nature of the allegations against him." (Docket No. 100 at ¶ 65).

[21] Paragraph 85 of Plaintiff's CSMF, which is admitted by Defendant, states that Ms. Gift's Investigative Report listed "ten (10) incidents of verbal behavior". (Docket No. 95 at ¶ 85; No. 114 at ¶ 85). However, the Court's own review of the Investigative Report shows eleven such incidents. (Docket No. 101-5 at 26-28).

[22] *Cf. O'Brien v. Regents of University of California*, 92 Cal.App.5th 1099, 1129 (2023) (recognizing in another context that "appointing a single individual . . . to investigate . . . and make findings of fact without conducting an evidentiary hearing . . . . could raise fairness concerns", but finding such concerns unwarranted where professor "was afforded a full evidentiary hearing before the [Privilege and Tenure] Committee, where he had the opportunity to present evidence and call and cross-examine witnesses" before he was found liable for sexually harassing a colleague, and thereafter suspended for a year without pay).

[23] Defendant denies ¶ 87 "as stated", but does not controvert Plaintiff's averments that he was not notified or questioned about the nine matters listed therein. Instead, Defendant merely alleges that Plaintiff "was asked generally whether he recalled touching anyone or making any sexual remarks toward anyone", and "[b]y way of further response" incorporates a recital of various admissions by Plaintiff concerning other matters. (Docket No. 114 at ¶ 87).

[24] To reiterate, *Loudermill* held that prior to termination, a public employee must receive "notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." *Loudermill*, 470 U.S. at 545.

[25] (Docket No. 132 at 37).

academic, fiscal, and tax year; and he remains free to teach graduate students and to pursue Chair or director assignments." (Docket No. 115 at 23-24). This Court disagrees with Defendant's restrictive view of the constitutional protection applicable to infringement, short of termination, of tenured employment. First, *Loudermill*'s widely applied standard is not "heightened", it "sets the minimum", *i.e.*, the irreducible requisites of notice and an opportunity to be heard. *See McDaniels*, 59 F.3d at 456 ("*Loudermill* sets the minimum due process pretermination requirements where state procedure also provides . . . substantial post-termination safeguards."). Second, while a year-long suspension is less severe than termination, it is hardly "minimal". A year is a long time to be deprived of one's livelihood.[26] And third, the somewhat lesser deprivation herein is offset by the limited *post*-deprivation procedures available to Plaintiff. *See id.*; *see also Loudermill*, 470 U.S. at 545 ("The formality and procedural requisites for the hearing can vary, depending upon the importance of the interests involved and the nature of the subsequent proceedings.") (quoting *Boddie v. Connecticut*, 401 U.S. 371, 378 (1971)). Plaintiff (unlike the plaintiffs in *Loudermill*, *McDaniels* and *Schmidt*) was not afforded an opportunity for a post-deprivation hearing or even a substantive review of the case against him.[27] Defendant's highly limited post-deprivation process militates against further reduction of the pre-deprivation process to which Plaintiff is entitled. Ultimately, the Court finds this issue to be governed by *Schmidt*, *supra*, in which the Third Circuit stated that "[w]here adequate post-deprivation procedures are available," an employee suspended without pay is entitled "only" to the *Loudermill* standard for pre-deprivation process. *Schmidt*, 639 F.3d at 597.[28] When, as here, the post-deprivation procedures are inadequate to redress

[26] *See* n.13, *supra*.

[27] *See* discussion in Part II(B)(2), *infra*.

[28] Under *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976) and its progeny (including *Loudermill*) the pre-deprivation process due depends on the strength of the interest at stake, not on its source. Accordingly, *Schmidt*'s holding that the *Loudermill* standard applies to a lengthy unpaid suspension of tenured employment governs here even though the protection against suspension without cause (*i.e.*, the protected property interest) was predicated on a statute in *Schmidt*

potential errors in disciplinary decision-making, *a fortiori* such an employee is entitled to no less than the *Loudermill* standard.

On this record, the absence of notice to Plaintiff at or before the beginning of the July 27, 2023 interview of any particular allegation of physical touching (other than that involving Ms. Ahern), and of the nine specified behaviors and comments at any other time, is deemed admitted for purposes of Plaintiff's present motion. *See* Fed. R. Civ. P. 56(e)(2) ("If a party fails . . . to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion").[29] *See also* nn. 17, 20, *supra*, and accompanying text. The Court concludes that Defendant did not provide sufficient notice of charges and evidence to allow Plaintiff a meaningful pre-deprivation opportunity to defend against those charges. *See Jennings-Fowler v. City of Scranton*, 680 F. App'x 112, 116 n.6 (3d Cir. 2017), quoting *Fraternal Order of Police Lodge No. 5 v. Tucker*, 868 F.2d 74, 80 (3d Cir. 1989) ("[A] *sina* [sic] *qua non* of a meaningful hearing is a sufficient explanation of the employer's evidence to permit a meaningful response."); *Morton*, 822 F.2d at 371 ("[F]or the informal discussion contemplated by *Loudermill* to be meaningful, the employee must be apprised of the nature of the charges against him or her before or at the time the hearing begins; subsequent presentation of

---

and founded on contract (interpreted in accordance with Third Circuit law as established in *Homan*) in the present case. *See* Section II(A)(1), *supra*.

[29] In addition, Local Civil Rule 56 E provides:

> **Admission of Material Facts.** Alleged material facts set forth in the moving party's Concise Statement of Material Facts or in the opposing party's Responsive Concise Statement, which are claimed to be undisputed, will for the purpose of deciding the motion for summary judgment be deemed admitted unless specifically denied or otherwise controverted by a separate concise statement of the opposing party.

LCvR 56 E. *See White v. Community Care, Inc*., Civil Action No. 07-150-7, 2008 WL 5216569, at *1 (W.D. Pa. Dec. 11, 2008) (noting violation of Local Rule 56 and that plaintiff's additional facts alleged in plaintiff's Concise Statement of Material Facts deemed admitted where defendant failed to respond to plaintiff's additional facts.); *see also Lee v. Sixth Mount Zion Baptist Church of Pittsburgh*, Civil Action No. 15-1599, 2017 WL 3608140, at *2 (W.D. Pa. Aug. 22, 2017) (citing *714 Ventures, Inc. v. Nat'l Oilwell Varco, L.P.*, No. CV 15-925, 2016 WL 59199934, at *1 n.1 (W.D. Pa. Oct. 11, 2016) (deeming facts admitted for violation of Local Rule 56.E)).

evidence underlying the charges of which the employee is not adequately informed does not satisfy the demands of due process.”). Plaintiff was entitled to be informed, no later than the beginning of his interview with Ms. Gift, as to each distinct charge that was considered by Ms. Gift and ultimately passed along to Dean Anderson for determination of sanctions. He was not so informed.[30]

**b. *McDaniels***

Defendant avers that this case is controlled by *McDaniels*, in which the Third Circuit found due process satisfied where a college administrator questioned a professor charged with sexual harassment about the most salient allegations of the sole complainant, but did not read or show a summary of those allegations to him. *See McDaniels*, 59 F.3d at 450-52. That summary, as recounted “in relevant part” by the Third Circuit, described four encounters between McDaniels and the student complainant, in which McDaniels allegedly: massaged the sleeping student’s neck at the library; stared at the student’s lower body; spoke to the student threateningly and profanely about “tough love”; and threatened to “get” the student if he disclosed their conversations. *McDaniels*, 59 F.3d at 450-51. In addition to these encounters, the summary mentioned the student’s allegations that McDaniels came to the library more often, as though he were looking for the student; and that McDaniels made “sexual innuendo” remarks during a phone call. *Id.* In his pretermination interview, McDaniels was asked about the most salient aspects of each of the four encounters. *McDaniels*, 59 F.3d at 452. Nothing in the court’s opinion indicates that McDaniels

[30] Defendant contends that although its “CS_20” policy “does not require the type of particularized notice that we might see in a Title IX setting”, its procedures nevertheless “describe due process exactly the way that [Plaintiff] received it.” (Docket No. 132 at 32-33, 35). The Court observes, however, that a State entity such as Defendant may not circumscribe constitutional due process rights by embodying less effectual procedures in a formal policy. *See Vitek v. Jones*, 445 U. S. 480, 445 U. S. 491 (1980), *quoted in Loudermill*, 470 U.S. at 541 (“minimum [procedural] requirements [are] a matter of federal law, they are not diminished by the fact that the State may have specified its own procedures that it may deem adequate for determining the preconditions to adverse official action”) (brackets in *Loudermill* opinion).

was asked about secondary allegations concerning those encounters, or about his suggestive remarks on the phone, or the frequency or purpose of his library visits. A jury, correctly instructed[31] as to a tenured professor's right to sufficient notice of charges and explanation of supporting evidence to enable him to "know the substance of the case that the employer has against him" so that he has a meaningful opportunity to respond, found that the college's representative "did inform McDaniels as to the substance of the case against him". *McDaniels*, 59 F.3d at 454-55. In rejecting McDaniels's contention that he "did not receive adequate notice and explanation of the charges against him because he was not told or given the exact allegations" made by the student, the Third Circuit relied upon the jury's finding: "[t]he only dispute, then, is whether this session put McDaniels on sufficient notice of the charges against him so he could respond meaningfully and on this point the verdict is unassailable." *McDaniels*, 59 F.3d at 457.

The present case is readily distinguishable from *McDaniels*, as it involves allegations of pervasive but not severe harassment, whereas the harassment alleged in *McDaniels* was evidently severe but not pervasive. More particularly: First, McDaniels was charged by a single, named accuser, with whom he allegedly had several encounters in connection with a single summer-term class. In contrast, the case against Plaintiff comprised a large (but undisclosed) number of lesser incidents over a period of years, involving multiple unidentified witnesses.[32] Second, McDaniels was questioned about each of the face-to-face encounters at issue, whereas Plaintiff herein has identified nine "behaviors or comments" that he was neither told nor asked about. Third, the allegations that McDaniels was questioned about (particularly his alleged threats of violence and

[31] *See McDaniels*, 59 F.3d at 456 ("We . . . find that the trial court's instructions that due process required the college to provide McDaniels with notice and explanation of the charges and an opportunity to respond were correct.").

[32] Ms. Gift's Investigative Report listed 13 witnesses interviewed (in addition to Plaintiff) and, as discussed above, 16 "behaviors/comments" comprising 20 physical or verbal incidents. (Docket No. 101-5 at 5-6, 26-28). So far as the record reflects, Plaintiff was not informed as to the number of witnesses or events at issue.

sexual assault)[33] were so severe that if true they plainly warranted his dismissal regardless of his guilt or innocence of other (comparatively minor) charges. Here, in contrast, there were no charges against Plaintiff so patently severe as to render undisclosed charges immaterial.

Based on the above analysis of the record, the Court finds that in the case *sub judice*, unlike *McDaniels*, a reasonable jury could not conclude that Plaintiff had "sufficient notice of the charges against him so he could respond meaningfully", because (even considering indirect notice through questioning at the July 27, 2023 interview to constitute timely notice of the subjects covered) extensive gaps in the notice provided (including an absence of notice or inquiry as to nine of 16 "behaviors/comments"), left him without "the opportunity to determine what facts, if any, within his knowledge might be presented in mitigation of or in denial of the charges." *Id.*, quoting *Gniotek*, 808 F.2d at 244. Accordingly, the Court concludes that the pre-deprivation process provided to Plaintiff was constitutionally insufficient.[34]

**2. Post-deprivation process**

In arguing that he was not afforded post-deprivation due process, Plaintiff undertakes a *Mathews v. Eldridge* balancing of "[f]irst, the private interest that will be affected by the official

[33] As related by the Court of Appeals, McDaniels's student alleged that he said "[i]f I need to I will hug you, beat the crap out of you or put my penis in your mouth." *McDaniels*, 59 F.3d at 450-51.

[34] In addition to the non-disclosure of the "behaviors/comments" discussed above, Plaintiff also was not asked or informed about Ms. Gift's inquiry into complaints from 2019 and 2020 (prior to the time period identified in Defendant's July 10, 2023 notice) by Plaintiff's former colleague Dr. Leslie Marshall, which comprised fully half of the 66-page Investigation Report upon which Plaintiff's discipline was based. (Docket No. 101-5 at 34-66; No. 114 at ¶¶ 75-78). Defendant asserts that Ms. Gift "did not consider Marshall's prior complaint" in reaching her finding of responsibility. (Docket No. 100 at ¶ 142). However, Dr. Marshall's prior complaints formed a large portion of the principal document provided to Dean Anderson for use in his determination of sanctions. And, although "Dean Anderson testified that he did not consider . . . Marshall's complaints when issuing the sanctions" (Docket No. 114 at ¶ 112, citing Docket No. 97-10 at 140-42), Defendant offers no alternative explanation for the conclusion, in Dean Anderson's November 7, 2023 letter announcing the sanctions, that Plaintiff had "a pattern of substantial harassing behavior going back at least 4 years." (Docket No. 114 at ¶ 111). Because the use or non-use of Dr. Marshall's complaints is a disputed issue, the Court does not rely upon the nondisclosure thereof in ruling on Plaintiff's motion for partial summary judgment. However, the Court notes that the dispute over that issue constitutes an additional ground for denial of Defendant's motion for summary judgment as to Count I.

action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest." (Docket No. 96 at 29) (quoting *Mathews*, 424 U.S. at 335). As to the first factor, Plaintiff observes that "[t]he one-year suspension without pay was not temporary[35] and resulted in substantial lost income and fringe benefits", and "[t]he Zoffer Chair removal was permanent and resulted in several years' worth of lost income and professional support." (Docket No. 96 at 29). As to the second, he argues that the risk of erroneous deprivation was elevated due to deficiencies in pre-deprivation process, that "the secret, superficial appeal procedures . . . did not in any way address that shortcoming", and that a live hearing with "rights to counsel, cross-examination, and a written decision by a neutral decision-maker" would "improve decision-making accuracy and reduce errors". (*Id.* at 29-31). And as to the third factor, Plaintiff asserts that "[t]he extra administrative burden of such a hearing is not significant" because Defendant "already has policies and procedures in place that provide for a live hearing in cases involving tenured faculty". (*Id.* at 31). Defendant disagrees with Plaintiff's assertion that a live hearing would not be burdensome, arguing "[t]o the contrary, that such procedures are burdensome is why they are reserved for only tenure and employment terminations." (Docket No. 115 at 25 n.9).

Without reaching whether a "live hearing" was required under the circumstances of this case, it seems apparent that simply providing Plaintiff with a copy of the Investigative Report on

[35] Technically, of course, the suspension *was* "temporary". However, it was also lengthy. Although counsel for Defendant "would encourage the Court not to be swayed by the length of [the] unpaid suspension" (Docket No. 132 at 73), the Supreme Court has issued a contrary directive. *See Gilbert*, 520 U.S. at 932 ("while our opinions have recognized the severity of depriving someone of the means of his livelihood, they have also emphasized that in determining what process is due, account must be taken of 'the *length*' and '*finality* of the deprivation'") (quoting *Logan v. Zimmerman Brush Co*., 455 U.S. 422, 434 (1982)) (italics in original).

which his discipline was based, at either the pre- or post-deprivation stage, would have served as a meaningful check against error while imposing no substantial burden on Defendant.[36]

Plaintiff appears well justified in labeling Defendant's CS_20 appeal procedure "secret" and "superficial". Plaintiff was not privy to the Investigation Report that formed the basis for his suspension, and his appeal was limited to three grounds (new information, procedural nonconformity, and severity of sanctions). (Docket No. 114 at ¶¶ 120, 123). His appeal was denied by an anonymous board that did not conduct a hearing or determine facts or guilt, on the conclusory ground that Plaintiff's "basis for appeal does not fall within any of the three limited grounds for appeal." (Docket No. 114 at ¶ 140).[37] The board's denial was approved by Defendant's Provost, who did not review the underlying record. (Docket No. 96 at 30-31).[38] Such a procedure appears poorly calculated to find or correct any errors in investigating and sanctioning faculty conduct.

Although the Court is not prepared to say that a full-blown hearing was required as a matter of law, it is clear that the post-deprivation procedure afforded to Plaintiff was constitutionally inadequate, especially in light of the limited grounds for appeal, which continued to deny Plaintiff an opportunity to address the substance of the charges against him. The Court concludes that,

---

[36] Defendant's counsel suggested at oral argument that Defendant does not provide copies of CS_20 investigative reports to their subjects due to "the risk of retaliation against individuals participating in an investigation". (Docket No. 132 at 68). However, as counsel acknowledged, "this is not in the record." (*Id.* at 67). Moreover, the Court observes that Defendant ultimately had to provide the withheld report in the course of the present litigation, which has consumed two years and spawned over 130 filings and countless pages of exhibits, briefs, depositions, *etc*. *Cf. id.* at 68 (Defendant's counsel conceding that "I may wish [Plaintiff] had received this whole report because I submit we would be here anyway, though perhaps not on a due process claim").

[37] Considering that Plaintiff's appeal addressed at length "the lack of due process, including the University's deficient notice of the charges against him and its deficient explanation of the evidence against him", as well as contending that "the sanctions were substantially disproportionate to the severity of the policy violations", the board's conclusion reflects how narrowly limited the permitted grounds for appeal were. (Docket No. 114 at ¶¶ 125-127, 131).

[38] Defendant responds that Plaintiff was permitted to employ counsel, that he has no evidence of bias on the part of the appeal board, and that the cases he cites are either old or involve termination. (Docket No. 115 at 30-31). Defendant does not venture a response with respect to the superficiality of the appeal process.

taken together or separately, the pre- and post-deprivation procedures available to Plaintiff were plainly insufficient to provide him with the notice and opportunity to be heard which are the irreducible requisites of constitutional due process.[39]

## III. Conclusion

For the foregoing reasons, the Court concludes that in suspending Plaintiff for a year without pay, and in removing him from the Zoffer Chair, Defendant deprived him of constitutionally protected property interests without due process, in violation of the Fourteenth Amendment. There is no genuine issue as to any material fact, and Plaintiff is entitled as a matter of law to partial summary judgment on his § 1983 due process claim. Accordingly, Plaintiff's Motion for Partial Summary Judgment will be granted, and Defendant's Motion for Summary Judgment will be denied with respect to Count I. An appropriate order follows.

Dated: August 14, 2026

*/s/ Nora Barry Fischer*
Nora Barry Fischer
Senior U.S. District Judge

cc/ecf: counsel of record

[39] *Cf. Bradley*, 913 F.2d at 1078 ("We need not decide in this case whether Bradley was entitled to a pre-suspension hearing, as he contends, or whether a post-suspension hearing sufficed. Bradley received no hearing, either before or after the suspension, and hence if he was suspended, as the record suggests, he was deprived of due process.") (citations omitted).